UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ERIN B.K.D. LUM and ROSS WAH JUN LUM,<br><br>        Debtor. | Case No. 10-02529<br>Chapter 7 |
| OFFICE OF THE UNITED STATES TRUSTEE,<br><br>        Plaintiff,<br><br>  vs.<br><br>ERIN B.K.D. LUM and ROSS WAH JUN LUM,<br><br>        Defendants. | Adv. Pro. No. 11-90007<br><br><br><br>Re: Docket No. 33 |

## MEMORANDUM DECISION CONCERNING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS 1, 2, & 3

In this adversary proceeding, the United States Trustee ("UST") seeks denial of the debtors' discharge pursuant to section 727 of the Bankruptcy Code for making numerous false statements under oath, concealing assets, and failing to maintain adequate financial records. I conclude that the debtors are not entitled to a discharge.

# FACTS

The debtors, Erin and Ross Lum, are sophisticated individuals with financial and business experience. They owned and operated Duncan Lum Mortgage Services, LLC ("DLMS"), a mortgage brokerage firm. Ms. Lum, who formerly worked as a paralegal, was employed full time at DLMS as a mortgage broker. Mr. Lum was employed as an engineer with the State of Hawaii. They earned over $200,000 per year in 2008 and 2009, and claim that they earn over $20,000 per month today.

The debtors also have experience in bankruptcy. The debtors commenced a chapter 13 bankruptcy case in 2000. That case was dismissed in 2001.

In 2008 and 2009, the debtors were under significant financial pressure. James and Yvonne Duncan, who are Mrs. Lum's parents, sued the debtors, obtained judgments for $113,000, and undertook collection actions. The debtors hired a bankruptcy attorney (the fourth attorney with whom they consulted) and filed a chapter 7 petition on August 15, 2010.

The debtors have admitted that they made false statements in the schedules and statements they filed with their petition. These false statements include the following:

2

U.S. Bankruptcy Court - Hawaii   #11-90007   Dkt # 35   Filed  03/16/12   Page 2 of 12

1. Line 2 of Schedule B required the debtors to list all bank and other financial accounts. The debtors listed nine accounts, but failed to disclose seven other bank accounts, plus an eighth account in the name of DLMS but which they regularly used for personal purposes, together holding approximately $2,500.00.

2. Line 13 of Schedule B required the debtors to list any interests in businesses. The debtors listed DLMS and valued the interest as $0.00. This was false. At the time of the filing, DLMS had outstanding commissions of at least $14,169.36. The debtors went to great lengths to conceal this fact. Three days after the debtors filed their bankruptcy petition, the debtors deposited $14,169.36 from two commissions into the DLMS business account. The same day, $14,170 in cash was withdrawn from the DLMS business account. The withdrawal was made in two separate transactions at different banks, presumably to avoid a Currency Transaction Report, which is required for cash transactions over $10,000.

3. Line 20 required the debtors to list any interests in a trust. The debtors represented that they had no interest in any trust. In fact, Mr. Lum was trustee for and a beneficiary of the Christine L. Lum

U.S. Bankruptcy Court - Hawaii   #11-90007   Dkt # 35   Filed  03/16/12   Page 3 of 12

Trust. Just 13 days before the bankruptcy, the trust sold real property for $11,000 and later distributed almost $8,000 to Mr. Lum. At the date of bankruptcy, the trust owned other real property.

    4.    Question 2 on the Statement of Financial Affairs required the debtors to disclose all of their income, other than from employment, trade, profession, or operation of a business during the two years prior to the bankruptcy. The debtors did not disclose the money they received from the Christine L. Lum trust and did not disclose that they had sold jewelry and received $20,000 during the two year period.

The debtors compounded their false statements at the first meeting of creditors, on September 23, 2010. They falsely affirmed that they had disclosed all of their assets, that their income and expenses were accurate, and that their statement of financial affairs was true and correct. At a continued meeting of creditors, after the undisclosed bank accounts had come to light, the debtors testified that they had provided all of the information to their attorney, and any omissions were the fault of their counsel. This was also false; the client questionnaire which the debtors provided to their attorney did not list the concealed accounts.

4

The debtors admitted that they did not keep check registers or logs for any of their twelve bank accounts. They claimed to have limited records regarding receipts and disbursements from two of the accounts. Mr. Lum admitted that the debtors had no records that would show where the debtors got money and how they spent it.

On September 26, 2011, a few days more than a year after they filed their petition, the debtors finally filed schedules and related documents which appear to be complete and accurate.

## STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). An issue is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. Id. at 248. In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving

5

party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

When the party moving for summary judgment bears the burden of proof at trial, the movant must produce evidence that would entitle the movant to a directed verdict if the evidence went uncontroverted at trial. C.A.R. Transp. Brokerage Co., Inc. v. Darden, 213 F.3d 474, 480 (9th Cir. 2000). Once the movant meets this burden, the respondent must go beyond the pleadings and set forth specific facts supported by admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50.

In a case under section 727 of the Bankruptcy Code, summary judgment is appropriate where the plaintiff presents evidence casting serious doubt about the truth of a relevant fact, and the debtor does not respond with any credible evidence. In re Aubrey, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990).

## DISCUSSION

Denial of Discharge under Section 727(a)(2)

Section 727(a)(2) authorizes the court to deny discharge where the debtor, with intent to hinder, delay or defraud creditors, transfers, removes, or conceals property of the debtor within a year before the bankruptcy filing or property of the

6

U.S. Bankruptcy Court - Hawaii   #11-90007   Dkt # 35   Filed 03/16/12   Page 6 of 12

estate after the bankruptcy filing. 11 U.S.C. § 727(a)(2). A party seeking denial of discharge under this section must prove: "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997). Fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. In re Devers, 759 F.2d 751, 754 (9th Cir. 1985). A court may find the requisite intent where there has been a pattern of falsity or where the debtor has displayed reckless indifference to or disregard of the truth. In re Wills, 243 B.R. 58, 64 (B.A.P. 9th Cir. 1999).

The debtors do not dispute the fact that they concealed at least seven bank accounts containing property of the estate. They claim that this was an innocent oversight on their part. This explanation is not credible. The debtors were using those accounts to pay their daily living expenses immediately before the bankruptcy. They could not have simply forgotten about those accounts. They also claim that the amount in the accounts is not material, but $2,500 is a significant share of the assets available to unsecured creditors in this case.

The debtors also do not dispute the fact that they concealed their interest in the trust. They claim that a spendthrift provision protects Mr. Lum's beneficial

7

interest, but this does not excuse them from disclosing the trust. Their nondisclosure hindered the ability of the trustee and creditors to scrutinize and possibly challenge the spendthrift provision. They also claim that the trust's assets are worthless, but the schedules require disclosure of all assets, valuable or not. It is for the trustee, not the debtors, to determine whether assets have value.

Finally, the debtors do not dispute the fact that DLMS received $14,169.36 a few days after the filing and that they immediately and surreptitiously converted the funds to cash and disposed of them. This amounts to a concealment of the cash (which may have been property of the estate, since the debtors admittedly used the funds in DLMS' accounts for personal expenses and thus treated those funds as their own) or of the value of DLMS, or both.

The U.S. Trustee is entitled to summary judgment on count 1.

Denial of Discharge under Section 727(a)(4)

Section 727(a)(4) bars a debtor's discharge were the debtor knowingly and fraudulently makes a false oath or account. The creditor must prove that: (1) the debtor's oath was made knowingly and fraudulently; and (2) the false oath was related to a material fact. In re Wills, 243 B.R. at 62; In re Aubrey, 111 B.R. at 274.

As is noted above, the debtors made many false statements on their

bankruptcy forms and at the meeting of creditors. They argue that the falsehoods were inadvertent and not deliberate. This contention is not remotely believable. The debtors' false statements "are numerous, obvious (from [the debtors'] perspective), and nearly all in favor of [the debtors]." In re Ballard, 2003 WL 22945926, at *3 (Bankr. D. Haw. Jul. 28, 2003). The pattern of falsity in this case clearly demonstrates fraudulent intent. In re Coombs, 193 B.R. 557, 564 (Bankr. S.D. Cal. 1996). Further, the debtors' reckless indifference for the omissions and their failure to correct them in an appropriate time period is circumstantial evidence of their fraudulent intent. In re Khalil, 379 B.R. 163, 173 (B.A.P. 9th Cir. 2007); In re Wills, 243 B.R. at 64.

    The U.S. Trustee is entitled to summary judgment on count 2.

Denial of Discharge Under Section 727(a)(3)

    The bankruptcy court shall grant the debtor a discharge, unless—

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The party objecting to debtor's discharge under § 727(a)(3) has the initial burden of proving: "(1) that the debtor failed to maintain and

9

preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (quoting In re Cox, 41 F.3d 1292, 1296 (9th Cir. 1994)). Once the initial burden is satisfied, "the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." Id.

Two elements are the primary focus of a section 727(a)(3) claim. First, the debtor's manner of bookkeeping must be unreasonable under the circumstances. Cox v. Lansdowne (In re Cox), 904 F.2d 1399, 1402 (9th Cir. 1990). Second, the more sophisticated the debtor is in financial matters, the greater the expectation creditors may have in the quality of record keeping. In re Caneva, 550 F.3d at 761.

The debtors' manner of bookkeeping was unreasonable. The debtors had numerous bank accounts, including business accounts, for which they kept no records at all. The debtors also had significant transactions prior to their bankruptcy filing, including the sale of jewelry and receipt of commissions, for which they have no accounting. The debtors offer no reasonable explanation why they did not keep any records or accounting for their numerous bank accounts or financial transactions.

The debtors are sophisticated individuals and should have known to keep at

U.S. Bankruptcy Court - Hawaii    #11-90007   Dkt # 35   Filed  03/16/12   Page 10 of 12

least some form of records for their personal and business accounts.  Further, the debtors had previously filed a bankruptcy case in 2000, and contemplated the current bankruptcy case for several years prior to the actual filing.  The debtors must have known what was required for their filing.  Finally, the debtors, being pursued by judgment creditors, chose to deal in cash for the purpose of concealing their transactions.  Holding them to a lower standard of record keeping because of their choice to deal in cash would effectively reward them for attempting to defraud their creditors.

Also troubling in this case, the debtors do not have any financial records to document how the commission payments were disbursed.  These commissions were deposited into the debtors' DLMS business account only a few days prior to the bankruptcy proceeding and withdrawn a few days after the petition in two cash transactions.  The debtors have no records to show where this money went.

In response to the motion for summary judgment, the debtors claim that their accountants have their accounting records.  The debtors do not attempt to explain their failure to arrange for the accountants to produce these alleged records during the bankruptcy or in this adversary proceeding.

Because of the debtors' failure to keep appropriate records, no creditor could ascertain the debtors' financial condition and material business transactions.

11

Summary judgment is therefore appropriate on count 3.

Counsel for the U.S. Trustee shall submit an appropriate final judgment.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 03/16/2012

12

U.S. Bankruptcy Court - Hawaii   #11-90007   Dkt # 35   Filed  03/16/12   Page 12 of 12